I'm Greg Wallace and I represent Vickie Kemp in this Social Security Disability Appeal. The narrow issue in this case is whether the ALJ properly relied on vocational expert testimony that created an apparent and unresolved conflict with the DOT. Charles Kemp suffers from borderline mental retardation, bilateral shoulder pain, COPD, osteoarthritis in his knee, depression, anxiety. The ALJ found that he could perform sedentary work but, among other things, limited him to only occasional reaching overhead with both arms. And those limitations were included in the hypothetical vocational expert. The vocational expert, in response to the hypothetical containing the limitation to only occasional overhead reaching, responded or testified that Kemp could work as a check-weigher. Now, according to the DOT, actually it's the SCO, but I'm going to refer to it as shorthand as the DOT. Well, that's part of my question here is because it's not clear to me why this would be apparent to the ALJ when he properly asked the VE if there was a conflict and the VE did not identify the conflict. And it would not appear from the DOT, the conflict would not appear. What should have made it apparent to the ALJ? What should have made it apparent first to the VE, because if the ALJ asked him to identify any apparent or possible conflict. Yeah, but his error is not at issue. I'm sorry? This is an error by the ALJ that's the issue. That's right. But the ALJ is required to resolve on the record any apparent conflicts. And the apparent conflict that exists here is between the VE testimony on the one hand, that Mr. Kemp could perform a job that requires constant reaching with the hypothetical limitation to no overhead, no more than occasional overhead reaching, because the DOT defines reaching as reaching in all directions. The SCO does. The SCO, which is the companion volume to the DOT. Well, that's kind of my problem. When the ALJ does what the regs tell him to do and asks the VE if there's a conflict and the VE does not identify a conflict that, A, is obscure in the authorities, given it's not in the DOT proper, and, B, is not apparent, to me at least, from the sort of colloquial description of what a check weigher does, I have trouble seeing where the ALJ was at fault. The ALJ has the responsibility to check if the VE. Well, not to be clairvoyant, though. But that resource, the DOT and the SCO, which courts have treated as part of the DOT, is available to the ALJ. I know this is in the regulations because Jones cites from them. Yes. Does all this come clear from the regulations? Yes, Your Honor. The DOT is the companion volume. I mean, the SCO is the companion volume that elaborates on the DOT classifications. Counsel, there's this ruling that says what the ALJ is supposed to do, and you're familiar with it. Yes. Have the clerk go through it and underline the word conflict. And at the top it says any conflict. I'm quoting here. Halfway through it says apparent unresolved conflict. Halfway down it says conflicts or apparent conflicts. In the words that the ALJ is supposed to do or die, it says any possible conflict. And coming out of that, it says conflicts or apparent conflicts. So they use about five different phraseologies of the standard. Has any court addressed what the real standard is here? Not that I'm aware of, Your Honor. And I would suggest that if the ruling defines conflict by using terms of apparent and possible, that that means that it is not a clear conflict. In other words, if there is a question about whether a conflict exists, that is whether there is an apparent or possible conflict, then it is the ALJ's duty to resolve that conflict on the record, which is not what happened in this particular case. The apparent inconsistency is between the DOT SCO requirement or indication that this check way or job requires constant reaching. Is this the standard way of doing it, this Miranda warning, you know, at the start of the VE's testimony? Is that the standard way of doing it? Typically it is. And that doesn't fit with the regulation. The regulation acts like it is afterwards that you do that. Some ALJ's do it beforehand. I mean, technically he didn't ask the VE here whether his testimony was consistent with the DOT. He just simply instructed the VE to give that. So some VE's do it afterwards. I mean, some ALJ's do it afterwards. Some ALJ's do it beforehand in the format here. There is not really one size that fits all. But the plainly written, God bless the administration, the plainly written SSR does sound like you are supposed to do it afterwards. It sounds like there is supposed to be any possible conflict, ask the VE about the conflict, and then get a reasonable explanation. I think that is the way it reads. I would not dispute that interpretation of it, Your Honor. I suppose that they could ask that question before, but I think it is difficult to put it in a question format until after the testimony has been given. And so to the apparent inconsistency here, the inconsistency is simply this. How can a person who cannot reach overhead more than occasionally, as found by the ALJ, perform a job that requires constant reaching when reaching is defined by both the DOT and SCO and the agency itself in Social Security Ruling 8515 as reaching in all directions? So the reaching here, we assume this reaching is in all directions unless specified differently. Nobody can reach in all directions except maybe a world-class gymnast. What do they mean by all directions? That is just what it says. It would include overhead reaching and lateral reaching as well, together. What? Of course, unlike the claimant in Jones, I guess Kemp was pro se, or there wasn't a lawyer to bring this out who would have looked at it. No, he was represented by counsel at the hearing. He was. That's right. So if checkwear is as described, it's being the second of possibly three people who will weigh a cup of explosive powder before you make ammunition out of it. And these are lateral handoffs. I can't see reaching overhead to throw explosives around an ammunition manufacturing facility. Why would anyone have a clue that the SCO's generic in all directions, which can't be taken literally because it's impossible, would extend overhead reaching for this kind of job? Aren't we just defying common sense or building so much procedure into this that it's ridiculous? Not at all, Your Honor. At least the definition of reaching, which sets sort of the default position on this, includes overhead reaching. That's clear from the definition. I thought you just said it doesn't actually use the word overhead. It says all directions. It says reaching in all directions, which would include overhead, I would assume. Well, it sounds like 360 degrees, which nobody's shoulder can do. Well, certainly, Your Honor, that's in a three-dimensional capacity here. When you talk about reaching in all directions, this is reaching, if I'm reaching overhead. And with all due respect, Your Honor, you don't know exactly whether this job requires overhead reaching or not. I don't know that. Government's counsel doesn't know that. The ALJ doesn't know that. It is precisely within the scope of the expertise of the vocational expert to say whether this job, which the DOT says requires constant reaching, doesn't require any more than occasional overhead reaching. Now, if the VE had explained that, we wouldn't be here today. Help us. This feels kind of hyper-technical. So help us feel better. And I've read Prochaska and a couple of these other cases. But help us feel better that this isn't just how many angels can dance on the pit. Go ahead. Well, the Seventh Circuit and Prochaska came to the same conclusion that we're arguing that this Court come to here. There's simply insufficient evidence in the record to determine whether there is a conflict. It seems like there's a conflict. It may be a conflict because there is a possible conflict because of the definition of reaching includes overhead reaching. And the ALJ specifically said he can only perform occasional overhead reaching. How do you reconcile that with a job that requires constant reaching if reaching is defined to include overhead reaching? So there is a possible or apparent conflict here. And there's simply not enough evidence in the record to determine whether the VE's testimony, in fact, conflicts with the DOT. And given the fact that there is a possible conflict, the ALJ was required to resolve that on the record. That's what ruling 00-4P requires, despite its other ambiguities. That's pretty clear in that regard. And so that's why we would simply ask. And this is not just hyper-technical for this case, but it also goes to vocational expert testimony in other cases as well. The ALJ and the district court and this court cannot be expected to read the vocational expert's mind. And that's why the agency requires that any possible conflicts be resolved on the record. A possible conflict exists here, and yet it was not resolved on the record. Thank you, Your Honor. Thank you. Mr. Mandola? Good afternoon. My name is Mark Mandola, and I represent Carolyn W. Colvin in this matter. As I think the appellant's counsel has made pretty clear, we don't disagree on too much at this stage. And, in fact, we even agree, basically, on the definition of reaching. We simply disagree on how to apply that definition. Now, the fundamental issue in this case is whether an individual that can only occasionally reach overhead can, nevertheless, perform a job that requires him to constantly reach. Now, I want to point out a mistake, I'm afraid, an oversight that opposing counsel committed during oral argument. He repeatedly used the word all when referring to the definition of reaching as contained in the SCO. That is not actually the word that the SCO uses, and I think that it is not a synonym under these circumstances. The SCO actually refers to reaching as extending the arms in any direction. So if I extend my head forward, I'm performing the act of reaching. If I extend my head overhead, I'm also performing the act of reaching. I reach no matter which direction I extend my arms, and I think the word any makes that clear. It's not the word all. It's the word any. And I think, actually, one thing that's interesting to me, the Tenth Circuit found the definition in the SCO actually clarified the matter and vitiated the commissioner's position in the Segovia case, which I cited. Unpublished case, counsel. Yes, Your Honor. It is an unpublished case. May I proceed? Yeah. I still think their reasoning is fairly persuasive. In that case, the Tenth Circuit directly explained that reaching is defined as extending the hands and arms in any direction. And the Tenth Circuit goes on to explain that the SCO does not separately classify overhead reaching. Thus, under the SCO, even a job requiring frequent reaching does not necessarily require more than occasional overhead reaching. I think that's pretty persuasive logic. Do you want to, counsel, address what kind of conflict we're talking about? You heard my quotations from the SSR. Yes, I did, Your Honor. Well, fortunately, from the commissioner's perspective, there is no conflict whatsoever in this case, so we don't really have to worry about the vagaries of language that you've astutely pointed out in the SSR. We don't believe there is an apparent conflict. We don't think there's a potential conflict. We don't think there's a possible conflict. We think that the Dictionary of Occupational Titles simply does not speak to the issue in play. The Dictionary of Occupational Titles does supply a generic frequency indicator. It does not suggest, however, how frequently the individual need reach in any specific direction. It says two-thirds of it more of the time. Yes, Your Honor. And I think just to make a hypothetical, I want you to imagine a job that required an individual to reach forward as pretty much the only thing that he did all day. Constantly. Maybe he's got a conveyor belt. Constantly. That's all he's doing all day long. Well, an individual like that would be engaging in constant reaching by extending his arms forward, but he would never extend his arms overhead or down. Unless he had to pass it to somebody up on another level. Or take it from one to another. You've seen I Love Lucy, right? You take it from one to another, up or down or around? Well, I would certainly agree that definitionally reaching can involve any direction. But in this case, I want to proceed to point out that the ALJ did acquit his duty. He called a vocational expert as authorized by 20 CFR 404.1566. He instructed the vocational expert to inform him of any conflict pursuant to SSR 00-4P. And he correctly offered a hypothetical question for sedentary work with the one additional limitation that he could reach overhead only occasionally. And the V.E. testified that despite these limitations, the individual could work as a check-wearer. Now, counsel said that the record just doesn't have any evidence on the issue, but I would suggest that the V.E.'s testimony in this case is implicit but necessary evidence for the proposition that this job doesn't include overhead reaching. He was there. He heard the hypothetical when the ALJ instructed him that this person couldn't perform overhead reaching. The V.E. nevertheless testified that this person could work as a check-wearer. Now, you've still got to go ahead and explain it, right? Your Miranda warning says if there's an apparent unresolved conflict, those are the words that the ALJ used here, please explain it and give me the source. And you're saying because there was no response to that, there wasn't conflict, right? No. Well, also, Your Honor, I would say that this isn't the sort of thing that's a conflict. You can look in the DOT front to back, and it would take you a very long time, but you can look in it front to back, and there's nothing that indicates the frequency with which an individual needs to reach in any specific direction. It's just not there. I think the phrase I used in my brief was that there may be a latent ambiguity in this case, but there's not a conflict potential or otherwise. Now, I wanted to furnish an example of something that would be an apparent conflict quickly to distinguish it. That might be, let's say a job is described as light work in the Dictionary of Occupational Titles, and the ALJ issues a hypothetical question that limits the individual to sedentary work. Now, and the VE nevertheless testifies that the person can perform this light work job. In that case, there would be an apparent conflict, but that conflict might be capable of resolution, and that's what SSR00-4P contemplates. For example, the VE might testify in that circumstance that thousands of these jobs, these light work of these jobs inside this, encompassed by this occupation are light work, but many other thousands are sedentary, and his testimony only extends to the extent that there are instantiations which are sedentary. That would be an apparent conflict, and that would be a valid explanation that the VE could offer to resolve the apparent conflict. There's no conflict here. There's no concrete contradiction. There's not any possible conflict? No, Your Honor. Now, I would agree that it's possible for a job to involve overhead reaching, but the DOT simply does not speak to it, and since the DOT does not speak to it, it's not there. Isn't that enough, though, for us to say let's go back and start with a new clean sheet here and let's get this straight so that everybody in the world that's affected by this can rely on it more reasonably than presently? Well, Your Honor, for one, because I don't think that there's any concrete conflict or there's no conflict at all. There's no potential conflict. There's no possible conflict. There's just an issue that the DOT doesn't speak to. I think that would be departing from the law. The second issue is In what way? In what way departing from the law? Well, because the SSR 00-4P does not instruct that the ALJ and the VE have to plumb the depths of the DOT and imagine conceivable ways in which a job could require more than the person is capable of doing. We're only looking for apparent conflicts, and there was no apparent conflict in this case. Now, I would also point out that earlier I gave a demonstration indicating that a person who just had to constantly reach forward would nevertheless be reaching constantly. Well, if we take the appellant's application of the definition of reaching to bear in this case, then suddenly any job that requires constant reaching is going to, according to the DOT, require constant reaching in all directions. No matter how obvious the description contained within the DOT is, that the job does not require constant reaching in all directions. And, you know, courts ---- That can be solved by asking the expert at the end of the testimony, the Miranda warning you give them at the first of the testimony. Well, Your Honor, I would point out that the Seventh Circuit, that's not part of the appellant's challenge in this case, but I would also point out that the Seventh Circuit and Weatherby did specifically address whether the SSR-OO-4P duty could be acquitted prophylactically. And in the Weatherby case, the Seventh Circuit decided that the prophylactic warnings were fine. And I must apologize on that score, actually. I incorrectly cited Weatherby in my brief. The actual citation is for 649 Federal 3rd 565. I said the volume was 648 in my brief. Why don't you run that by me again? I apologize for that mistake. I'm sorry, Your Honor? Run that by me again, those numbers. The correct citation is for Weatherby, which says that the prophylactic warning is fine, is 649 Federal 3rd 565. If we rule for you, do we create a conflict with Prochaska? No, I don't think there is any conflict with Prochaska. In fact, that's why I cited also to Kettlebetter later in my brief, I believe, on page 15. In Prochaska, the ALJ actually committed the cardinal sin of not asking about conflicts at all. And in the Seventh Circuit, they apply kind of a more rigorous standard when the ALJ doesn't ask at all because there's just a primary violation of his duty to inquire about conflicts. Here, this case is more in line with Kettlebetter, a different Seventh Circuit case, and several unpublished Seventh Circuit cases as well. Well, now, it says in Prochaska, and I've got the opinion I could look, it says, here the ALJ did inquire about a potential conflict, but the V.E.'s cursory answer did not explain. So I think there was an inquiry in Prochaska on page 736. I would just request that Your Honor also look at the subsequent Kettlebetter case, which is a 2008 Seventh Circuit case in which the Seventh Circuit actually peruses the demands of the job as stated in the narrative description contained in the DOT and sees no conflict. And then I would also point out that, albeit in unpublished cases, that the Tenth Circuit reached the same conclusion in Segovia and that the Fourth Circuit also reached the same position in Byrd. What about our case of Montgomery v. Chatter while we're counting the noses of the cases? I'm going to apologize, Your Honor. I'm not familiar with that case. Oh, okay. It's an Eighth Circuit case, and it's just very big on the ALJ's duty to develop the record. Yes, Your Honor. I would just suggest that the ALJ fulfilled the only duty that came into play there by instructing the V.E. that his testimony needed to be consistent with the Dictionary of Occupational Titles, which actually isn't necessary, and then instructed him to expand upon any perceived variances. I would also point out that, direct your attention to a case that I cited on page 15 of my brief. Now, this case is just a district court opinion. It's called Reichard, and I didn't cite it for its precedential value, of course, but what I did cite it to it for was some interesting V.E. testimony that's contained in that case. In that case, the V.E. in question actually does break down the issues with relating to reaching, and in that case the V.E. testifies that the DOT, consistent with the Commissioner's position, simply is not sufficiently granular to break down reaching in any specific direction.  Reichard versus Astro? It's just a district court case, but I cited it for the V.E.'s testimony, which I thought kind of shows that V.E.'s understand the Dictionary of Occupational Titles frequency indicator, as the Commissioner argues on appeal, and that I think it would be imprudent to interpret the definition contained in the SEO in a manner that's inconsistent with how the actual practitioners and the actual experts view the source material. Finally, I just wanted at the very end to direct your attention to the cases cited in my brief from the Fifth Circuit, on page 18 of my brief, Masterson and Carey, in which those courts really expansively point out that it's very easy for a plaintiff or an appellant to look at the many different requirements of a job contained in the DOT and theorize ways in which it's conceivable that these requirements may exceed a given job in question, and that there's an opportunity for plaintiffs to question the V.E. and resolve their curiosity, and that time is during the administrative hearing. You're getting very close to being conflicting with your own SSR written in plain English that says it's the ALJ's job. Yes, Your Honor, and in this case, the ALJ acquitted his duty, but I think that if the plaintiff sought more explication, he certainly had that opportunity, but instead plaintiff's counsel didn't ask a single question of the V.E. and, in fact, stipulated to the V.E.'s credentials. So I think that the V.E.'s status as an expert and his testimony that the plaintiff could perform this job in question resolves the matter in play. And, again, I would reiterate that we don't think this is a harmless error case. The commissioner takes the position that the ALJ did precisely what he was supposed to in instructing the V.E. that his testimony should be consistent with the Dictionary of Occupational Titles. The V.E. understood that. He acknowledged that. The V.E. testified that the plaintiff appellant could perform the job of check wire, and I believe that substantial evidence supports the ALJ's holding that the plaintiff appellant could, in fact, perform the job of check wire. Thank you for your time, Your Honor. Thank you. Mr. Wallace, have some time. Yes, Your Honor, three minutes. May it please the Court, I have just a few things in rebuttal here. I stand corrected. It is any direction. Thank you. And I think, obviously, that helps our argument. I appreciate that correction. Let me make it clear that we are not suggesting, as counsel for the commissioner has said, that the scale, I mean, the check wire job actually, in fact, does require constant overhead or reaching or more than occasional overhead reaching. But given the SCO definition of reaching, which includes reaching in any direction, and the agency definition, which is identical, it could include more than occasional overhead reaching, hence the existence of a possible or apparent conflict. The DOT at least suggests, by defining reaching as reaching in any direction, that that is a possibility, that the job would require more than occasional overhead reaching. It doesn't rule that out, and the V.E. testimony in this case did not exclude it. I would simply ask the Court to think about this. If you were an ALJ and you had asked a vocational expert to consider whether there were any jobs available in the economy for a person of the claimant's age, educational background, work history, and that claimant was limited in certain ways, including limited to only occasional overhead reaching, no more than that, and the V.E. then testified, well, Your Honor, here's a job that I think he can perform. But by the way, the DOT says that that job requires constant reaching. Would you leave that testimony as it is? Or would you ask, well, if the job requires constant reaching, and I told you to rule out jobs that require no more than occasional overhead reaching, how is that resolved? You would ask the V.E. in all likelihood to resolve that apparent conflict. As I recall in Jones, the claimant's lawyer did ask that, and the V.E. said, well, it means he can't do 10 to 15 percent of the universe held not disabled affirmed. Exactly, and that's exactly the kind of explanation that the ALJ should have elicited in this particular case. Is there a copy of the DOT and SCO at every hearing? I think the V.E.s, I don't do hearings on a regular basis. Well, I've never been to one. Wife and father-in-law do, but I think the V.E.s have them on their computer, and I think there are computer programs where they can be called up. But the ALJ has an opportunity to go back to, as he's writing his decision to make that inquiry, just like we do in writing our briefs. Does the record show here whether, I don't think, the V.E. didn't read from the SCO and the DOT, did he? No, but he did specify this checkwear job, and he gave the DOT number for this job, which would allow the ALJ to go back and look up that number, just as we did, and compare that to the requirements. And he should then do what? Reopen the hearing, in your view, procedurally? I see my time is up, may I answer your question? Yes, he could send an interrogatory to the vocational expert to say, look, the V.E. says this job requires constant reaching. I limited the claimant to only occasional overhead reaching. Could you resolve this apparent conflict? He wouldn't even have to reconvene a hearing. He could send a written interrogatory to the V.E. Then he'd presumably have to give the claimant an attorney chance to respond. Yes. The V.E.'s response. Yes. It seems to me that's the likely way in this situation, because they're not sitting there with all the books at the table. Unless it's a DOT classification this ALJ happened to be familiar with. Exactly, Your Honor. He's not going to catch it until the back room. That's probably true. And that's also true for claimant's counsel as well in that situation. But as Judge Benton mentioned, the ruling places the responsibility squarely on the V.E., not on the claimant's counsel to help make the government's case for it in this particular situation. Thank you, Your Honors. Thank you both, counsel. It's, I guess, not that unusual, but it's not a typical disability appeal, and that's why we thought after studying it that argument would be helpful, and it has been. We appreciate both of you coming to help us. We will take the case.